UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

———————————————————

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.),

               Plaintiff,

– against –

RACHEL EISDORFER, BERNADETTE
PANZELLA, as TRUSTEE of THE
GARY P. ESCANDON IRREVOCABLE
INSURANCE TRUST, MARIO
GURRIERI, EDWARD MUTCH, KIM
BENNETT, JONNELL BRUNDAGE,
AND BRIGETTE LUTZ,

               Interpleader Defendants.

———————————————————

**MEMORANDUM & ORDER**

24-CV-2974 (ERK) (CHK)

KORMAN, *J.*:

Plaintiff John Hancock Life Insurance Company ("Plaintiff" or "John Hancock") filed this interpleader action against Defendants Rachel Eisdorfer; Bernadette Panzella, as Trustee of the Gary P. Escandon Irrevocable Insurance Trust; Mario Gurrieri; Edward Mutch; Kim Bennett; Jonnell Brundage; and Brigette Lutz (collectively, "Defendants"), seeking interpleader relief regarding contested death benefits totaling $2,250,000 due under a life insurance policy. ECF No. 1 ¶

1

12, 31, 37.  John Hancock has now filed a Motion for Interpleader Deposit and for Interpleader Relief.[1]  John Hancock's motion is granted in part and denied in part.

## I.   Factual Background

### A. The Policy

On or about September 20, 2007, John Hancock issued a life insurance policy (the "Policy") to insure the life of Gary P. Escandon (the "Decedent" or "Escandon").  ECF No. 1 ¶ 12.  The death benefit under the Policy is $2,250,000.  *Id.*  At the time the Policy was issued, Gary Escandon was the owner, and Stephanie Escandon—the Decedent's then-wife—was the sole beneficiary of the Policy.  *Id.* ¶ 13; ECF No. 1-9 at 28.  In October 2008, John Hancock received a "Change of Beneficiary" form signed by Escandon, requesting that the beneficiary of the Policy be changed to Brigette Lutz, who was identified as Escandon's fiancée.  ECF No. 1 ¶ 16; ECF No. 1-10.

In December 2009, John Hancock received an "Absolute/Gift Assignment - Life Insurance" form signed by Escandon, requesting that the owner and beneficiary of the Policy be changed to Mario Gurrieri as Trustee of the Gary P. Escandon

---

[1]  Presently before this Court are also: (1) Eisdorfer's Motion to Dismiss Gurrieri's Cross-Claims, ECF No. 42; (2) Eisdorfer's Motion to Dismiss Panzella's Claim to the *Res*, ECF. No. 43; (3) Eisdorfer's Motion to Dismiss Mutch, Bennett, and Brundage's (collectively, "Pro Se Defendants'") Cross-Claim, ECF No. 44; and (4) Gurrieri's Motion for Judgment on the Pleadings, ECF No. 59.  These motions will be addressed in separate opinions.

Irrevocable Insurance Trust (the "Trust").  ECF No. 1 ¶ 17; ECF No. 1-11.  In January 2010, John Hancock sent a letter to Gurrieri confirming that John Hancock had registered the Assignment and Beneficiary Designation forms.  ECF No. 1 ¶ 18; ECF No. 1-12.

Subsequently, on or about January 10, 2014, John Hancock received an "Assignment of Life Insurance Policy as Collateral" form signed by Gurrieri requesting that the Policy be transferred to Rachel Eisdorfer as Assignee.[2]  ECF No. 1 ¶ 19; ECF No. 1-13.  Then, on or about January 17, 2014, John Hancock received a letter from Gurrieri advising that he had mistakenly executed the assignment of the Policy and that such assignment was not permitted under the terms of the governing trust document.  ECF No. 1 ¶ 20; ECF No. 1-14.  Gurrieri requested that John Hancock decline to acknowledge any Assignment from Eisdorfer.  ECF No. 1 ¶ 20; ECF No. 1-14.  On or about January 27, 2014, John Hancock sent a letter to Gurrieri advising that to void the collateral assignment, Eisdorfer needed to confirm in writing that she had no interest in the Policy.  ECF No. 1 ¶ 21; ECF No. 1-15.  Several weeks later, on or about February 19, 2014, John Hancock sent another letter to Gurrieri advising that the company had not received a response in reference to the collateral assignment request.  ECF No. 1 ¶ 22; ECF No. 1-16.  On or about March

---

[2]  The nature of Eisdorfer's relationship to Escandon is not readily apparent from the pleadings.

4, 2014, John Hancock received a letter from Gurrieri dated February 16, 2014, stating that he was in the process of obtaining a "Recission of the Collateral Assignment" from Eisdorfer.  ECF No. 1 ¶ 23; ECF No. 1-17.  John Hancock never received this recission.  ECF No. 1 ¶ 24.

On or about May 22, 2014, John Hancock received a letter from Lutz, advising that she was the Decedent's wife and that she "object[ed] to John Hancock taking any action to deprive [her] of [her] entitlement" to the Policy.  ECF No. 1 ¶ 25; ECF No. 1-18.  The following month, on or about June 23, 2014, John Hancock sent a letter to Gurrieri and Eisdorfer advising that the Collateral Assignment of the Life Insurance Policy to Eisdorfer had been processed.  ECF No. 1 ¶ 26; ECF No. 1-19.

### B. The Death Benefit

Escandon died on August 14, 2023.  ECF No. 1 ¶ 27.  As a result, $2,250,000 (the "Death Benefit") became due to the Policy's beneficiaries.  ECF No. 1-9 at 28.

### C. Competing Claims to the Death Benefit

On or about September 27, 2023, John Hancock received a letter from Gurrieri stating that Eisdorfer "will soon be seeking to make a claim" for the Death Benefit but that "payment to [] Eisdorfer would be deemed improper and incorrect."  ECF No. 1 ¶ 28; ECF No. 1-20.

On or about October 23, 2023, John Hancock received a claim for the Death Benefit from Bernadette Panzella in her capacity as the successor Trustee of the Gary

P. Escandon Irrevocable Insurance Trust, along with a notice that Gurrieri had resigned as Trustee of the Trust and other supporting documents.  ECF No. 1 ¶ 30; ECF No. 1-21 at 47, 45.

On or about October 26, 2023, John Hancock received a letter from Eisdorfer's attorney advising that Eisdorfer intended to submit a claim to the Death Benefit and requesting that John Hancock not release the Death Benefit to anyone other than her.  ECF No. 1 ¶ 30; ECF No. 1-22.

## II.    Procedural Background

On April 22, 2024, John Hancock brought this action of interpleader, naming as Defendants Eisdorfer; Panzella, as Trustee of the Gary P. Escandon Irrevocable Insurance Trust; Gurrieri; Mutch; Bennett; Brundage; and Lutz.  John Hancock does not claim any beneficial interest in the Policy's Death Benefit and states that it "cannot determine to whom and in what amounts the [D]eath [B]enefit should be paid until the conflicting claims are settled."  ECF No. 1 ¶¶ 33, 35.  John Hancock's Interpleader Complaint seeks judgment from this court (1) directing John Hancock to deposit with the registry of the court the sum of $2,250,000 plus contractual interest at a rate of 1% from August 14, 2023 through the date of deposit; (2) ordering that upon such deposit, John Hancock is released from any liability under or with respect to the Policy; (3) permanently enjoining Interpleader Defendants from instituting an action against John Hancock with respect to the Policy or their rights

to any amount due under the Policy; (4) "requiring the Interpleader Defendants to settle between themselves their right to monies due under the Policy;" and (5) awarding John Hancock its costs and attorneys' fees.  ECF No. 1 at 7.

In its present Motion for Interpleader Deposit and for Interpleader Relief, John Hancock has moved to:  (1) deposit the Policy's Death Benefit with the registry of the court; (2) be dismissed from this action with prejudice and be discharged from "any and all" liability arising from this action, the Policy, Death Benefit, or the interpleader property; and (3) obtain an injunction against Interpleader Defendants prohibiting them from bringing any action against John Hancock "with respect to, affecting, or in any way arising out of the Policy, the Death Benefit, or the [i]nterpleader [p]roperty."  ECF No. 72-1 at 9–10; ECF No 72-2 ¶¶ 1–5.

## III.    Legal Standard

John Hancock brings this interpleader action pursuant to Federal Rule of Civil Procedure 22 and the federal interpleader statute, 28 U.S.C. 1335.[3]  Interpleader is a statutory remedy that allows "a party who fears being exposed to the vexation of

---

[3]  An interpleader action brought under Rule 22 is referred to as "rule interpleader," while an interpleader action brought under 28 U.S.C. § 1335 is referred to as "statutory interpleader." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 268 n.3 (S.D.N.Y. 2024).  "The two types of interpleader serve the same purpose and perform the same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process." *Id.* (quoting *Great Wall de Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 482 n.11 (S.D.N.Y. 2015)).

defending multiple claims to a limited fund or property that is under [its] control a procedure to settle the controversy and satisfy [its] obligation in a single proceeding." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 268 (S.D.N.Y. 2024) (quoting 7 Wright & Miller, Fed. Prac. & Proc. Civ. § 1704 (3d. ed. 2023)). "Rather than forcing the stakeholder to litigate those multiple claims or determine which litigant has the superior claim, interpleader allows the stakeholder to relinquish the funds at issue and avoid what is essentially a contest between the claimants." *RiverSource Life Ins. Co. v. Martell*, No. 3:20-CV-00749 (KAD), 2020 WL 13566069, at *3 (D. Conn. Dec. 23, 2020).

Interpleader actions proceed in two stages. *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988). First, the court must determine whether the statutory requirements for an interpleader action have been met. *See Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 415 (E.D.N.Y. 2013). Pursuant to the federal interpleader statute, an interpleader action may be properly brought when: (1) the amount in controversy is $500 or more; (2) the two or more adverse claimants claiming entitlement to the amount in controversy are of diverse citizenship; and (3) the plaintiff deposits the amount at issue with the court. 28 U.S.C. § 1335. If the court determines that the interpleader action has been properly brought, then the second stage requires that the court determine the respective rights of the claimants to the fund. *See Fid. Brokerage*

7

*Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (citing *Avant Petroleum*, 853 F.2d at 143)).

## IV.    Discussion

### A. Depositing of Funds with the Court

John Hancock is permitted to deposit the Policy's Death Benefit with the registry of the Court.  No party opposes this portion of John Hancock's motion, *see* ECF No. 72-3 at 2, and John Hancock has satisfied the jurisdictional requirements for interpleader.  First, it is undisputed that John Hancock is holding a life insurance policy of $2,250,000, more than the statutory requirement of $500.  Second, Eisdorfer, Gurrieri, and Panzella have all communicated with John Hancock regarding their asserted claim to the Policy.  *See* ECF No. 1 ¶¶ 28–30.  Moreover, John Hancock is a neutral party taking no position as to the proper disbursement.  *Id.* ¶ 33.  Third, there is minimal diversity because Defendant Eisdorfer is a citizen of New York, while Defendants Bennett, Gurrieri, Mutch, Brundage, and Lutz are citizens of New Jersey.  *Id.* ¶¶ 2–8.  Fourth and finally, John Hancock has asked to deposit the relevant funds with the Court.  *Id.* ¶ 37; *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 360 (S.D.N.Y. 2008) ("[Plaintiff] has not yet deposited the funds with the Court, but deposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit.").

8

Accordingly, John Hancock's Motion to Deposit Interpleader Funds is granted. *See 29-33 Ninth Ave.*, 710 F. Supp. 3d at 274–75 (granting plaintiff's motion to deposit funds with Court after finding that interpleader jurisdiction existed). In order to comply with Local Civil Rule 67.1, John Hancock should file a proposed order concerning the logistics of the deposit. This order should instruct John Hancock to deposit the proceeds of the Policy, amounting to $2,250,000 in addition to applicable interest, with the Court registry in an interest-bearing account, and should be in full compliance with Local Civil Rule 67.1.

### B. Discharge from Liability and Dismissal from the Case

John Hancock next requests that it be discharged from liability and dismissed from the case. Specifically, John Hancock seeks an order discharging the company from "any and all liability of any kind or nature whatsoever, in tort or contract or equity, arising from, without limitation, the within action, the Policy, the Death Benefit, or the Interpleader Property." ECF No. 72-2 ¶ 3. Eisdorfer opposes this portion of John Hancock's motion on the grounds that John Hancock "unnecessarily delayed in bringing this action" and that the company may be independently liable to Eisdorfer for its "carelessness in handling the Policy." ECF No. 72-3 at 11. The other Interpleader Defendants do not oppose John Hancock's request.

John Hancock is entitled to the relief it seeks. Courts should discharge a stakeholder from liability and dismiss it from the case if the jurisdictional

9

requirements of interpleader are met, unless the court finds the stakeholder may be independently liable to a claimant or the stakeholder retains some claim to the stake. *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 182–83 (S.D.N.Y. 2002); *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010), *aff'd sub nom.*, *MetLife Invs. USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011); *Solar Spectrum LLC v. AEC Yield Cap. LLC*, No. 18-CV-7950 (GBD) (JLC), 2019 WL 5381798, at *5 (S.D.N.Y. Oct. 22, 2019). Because John Hancock claims no interest in the Death Benefit, ECF No. 1 ¶ 33, only evidence of independent liability to a claimant could justify denying John Hancock's request for discharge and dismissal.

For John Hancock to be independently liable, claimants would need plausible claims of "wrongful conduct independent from the filing of an interpleader, or the retention of interpleaded assets pending direction from the court." *Bank of New York v. First Millennium, Inc.*, No. 06 Civ. 13388 (CSH), 2008 WL 953619, at *7 (S.D.N.Y. Apr. 8, 2008). Bad-faith delay in bringing an interpleader action can justify a denial of interpleader discharge. *See Mendez v. Tchrs. Ins. & Annuity Ass'n & Coll. Ret. Equities Fund*, 982 F.2d 783, 787–88 (2d Cir. 1992).

Eisdorfer's Answer does not assert any counterclaims against John Hancock, nor has she moved this Court for permission to modify her Answer. While a counterclaim against the stakeholder is not strictly required to deny discharge,

10

discharge is typically only denied when viable counterclaims against the stakeholder have been raised. *See New York Life Grp. Ins. Co. of N.Y. v. Maxwell*, 645 F. Supp. 3d 26, 35 (N.D.N.Y. 2022) (noting that "[i]n the past, when courts have denied an interpleader plaintiff's motion to discharge, the interpleaded defendants already raised viable counterclaims against the insurance company that initiated suit" and collecting cases). Indeed, Eisdorfer cites multiple cases suggesting that an interpleader plaintiff is maintained as a party only when counterclaims have been brought against them. *See, e.g.*, *William Penn*, 569 F. Supp. 2d at 361 ("Where there are multiple claims to the stake *as well as counterclaims against the stakeholder*, interpleader is proper, and the court may discharge the plaintiff from liability on the stake but retain jurisdiction over the plaintiff *for purposes of adjudicating the counterclaims*.") (emphases added). Statements in Eisdorfer's opposition brief are not the proper vehicle through which to raise a counterclaim against John Hancock. *See Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

Similarly, the cases Eisdorfer cites in support of her assertion that the mere possibility of independent liability requires John Hancock to remain a party to this action do not support her position. *See* ECF No. 72-3, at 14. In *National Life Insurance v. Gomez*, for example, the court merely refused to grant "a permanent injunction barring any future claims arising out of the circumstances of [that] case"

11

because statements in an interpleader defendant's counterclaims "raise[d] the possibility that some claim of independent liability may exist."[4] *Nat'l Life Ins. Co. v. Gomez*, No. 1:15-CV-00439 (MAD/CFH), 2016 WL 2757748, at *2 (N.D.N.Y. May 12, 2016). In fact, the court in Gomez *did* dismiss the stakeholder from the interpleader action and from any further liability as to the deposited funds. *Id.* at *8.

Setting aside Eisdorfer's failure to assert a counterclaim, there is nothing on the face of her Answer that would suggest John Hancock acted wrongfully such that it should remain a party to this case. Eisdorfer's Answer cannot support a finding of "unconscionable, bad-faith or willfully wrongful conduct" on the part of John Hancock.[5] *William Penn*, 569 F. Supp. 2d at 363; *See also United States Life Ins. Co. in City of New York v. DeJesus*, No. 22-CV-7318 (OTW), 2025 WL 835866, at *3–4 (S.D.N.Y. Mar. 17, 2025) (dismissing stakeholder from interpleader action over defendant's opposition because there was no evidence of "bad faith in bringing [the] action" or that the company was "an interested stakeholder").

---

[4] *Martell*, 2020 WL 13566069, which Eisdorfer cites for the proposition that "the court need only determine that there is a *possibility* that an independent claim exists" to deny interpleader relief, *see* ECF No. 72-2 at 13, itself draws this proposition from *Gomez*.

[5] The allegations that Eisdorfer set forth in a separate action brought before the instant case also do not contain allegations supporting an inference that John Hancock acted wrongfully. All of the causes of action set forth in that complaint were related to the disbursement of the proceeds currently at issue in this case. *See* ECF No. 72-15.

Eisdorfer's argument that John Hancock should be kept as a party to the case because the company delayed in bringing the interpleader action is also unavailing. *See* ECF No. 72-3 at 11–13. As John Hancock explains, the company could not have brought an interpleader suit until the Decedent had died. ECF No. 72-13 at 4. After the Decedent died, John Hancock reached out to the parties to encourage them to settle the dispute and, when Eisdorfer individually sued John Hancock, the company waited to file the instant motion until that case had been resolved. *Id.* at 4–5. This explanation is reasonable. *Cf. 29-33 Ninth Ave.*, 710 F. Supp 3d at 272 (no finding of bad faith or undue delay where interpleader plaintiff "reasonably instructed and expected the accountholders to send joint notarized instructions or a court order on how to resolve the conflict and instituted the interpleader action once the parties failed to do so."). Accordingly, there is no basis for keeping John Hancock as a party to the case on these grounds.

Eisdorfer also argues that because discovery may uncover wrongdoing by John Hancock, the company should remain a party to the case. ECF No. 72-3 at 15. Not only is this argument speculative, but it runs contrary to the equitable nature of interpleader. *See Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993). To maintain John Hancock as a party to this action without any claims against it, on the off-chance that discovery uncovers an independent basis for liability, would be both inefficient and unfair.

13

If discovery reveals that John Hancock engaged in wrongdoing, Eisdorfer may bring those claims in a separate action to the extent she has not already forfeited them. After all, "interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds." *See Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012). Plaintiff is therefore dismissed from this action with prejudice on the condition that it deposits the funds with the Court in accordance with this Memorandum and Order. By the same token, however, John Hancock will not be discharged from "any and all liability of any kind or nature whatsoever, in tort or contract or equity, arising from, without limitation, the within action, the Policy, the Death Benefit, or the Interpleader Property." ECF No. 72-2 ¶ 3. This language goes beyond just "claims to the interpleaded funds," to which interpleader protection extends. *See Lee*, 688 F.3d at 1009. Instead, John Hancock is discharged from any future liability pertaining to the deposited funds or arising from its decision to settle claims to these funds by way of interpleader—on the condition that it deposits the funds with the registry of the Court. *See Gomez*, 2016 WL 2757748, at *2; *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 266 (3d Cir. 2009).

### C. Injunction Against Interpleader Defendants

Finally, John Hancock requests that the Interpleader Defendants be enjoined "from bringing or prosecuting any proceeding in any State or United States court or

14

other tribunal against John Hancock with respect to, affecting, or in any way arising out of the Policy, the Death Benefit, or the Interpleader Property." ECF No. 72-2 at 4. Eisdorfer opposes Plaintiff's motion, *see* ECF No. 72-3 at 9–10, arguing that the relief sought extends beyond the bounds of 28 U.S.C. § 2361, which provides that "[i]n any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361. To that end, the statute "enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed. R. Civ. P., which normally governs the issuance of injunctive relief." *Wells Fargo Bank N.A. v. Kings Tec Support Inc.*, No. 23-CV-4551, 2023 WL 8189799, at *4 (E.D.N.Y. Nov. 27, 2023) (quoting *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992)). "[A] permanent injunction restraining the Defendants from continuing or bringing any suits against [the stakeholder] with regard to the [disputed funds] at issue is necessary to protect [the stakeholder] from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy." *Id.* Nevertheless, "[t]he federal appellate courts agree that an injunction or stay on other litigation issued under § 2361 must not be 'overbroad.'" *Buckeye State Mut. Ins. Co. v. Moens*, 944

15

F. Supp. 2d 678, 690 (N.D. Iowa 2013) (citing *U.S. Fire. Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201 (3d Cir. 1999)).  In other words, the interpleader device is not intended to be "an all-purpose get-out-of-jail-free card." *Hovis*, 553 F.3d at 265.

The scope of the injunctive relief sought by John Hancock extends beyond "litigation involving the fund that is the subject matter of the interpleader," and is therefore impermissibly broad.  7 Wright & Miller, Fed. Prac. & Proc. Civ. § 1717 (3d. ed.).  Interpleader cannot be used to shield John Hancock from all liability with any connection to the Policy.  *See Hovis*, 553 F.3d at 265 (holding that "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy.").  Accordingly, while some form of injunctive relief is proper in this case, I decline to issue Plaintiff's proposed order.  Instead, pursuant to 28 U.S.C. § 2361, the Interpleader Defendants are enjoined from instituting or prosecuting—in any other court—any other actions against John Hancock affecting the property at issue in this interpleader action.  This injunctive relief does not extend to claims that are "truly independent of who [is] entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Hovis*, 553 F.3d at 264–65.

16

## CONCLUSION

John Hancock is directed to file a proposed order concerning the logistics of the deposit.  This order should instruct John Hancock to deposit the proceeds of the Policy, amounting to $2,250,000, in addition to applicable interest, with the Court registry in an interest-bearing account, in compliance with Local Civil Rule 67.1.[6] Once the funds are deposited, John Hancock will be dismissed from this action and discharged from liability pertaining to the deposited funds or arising from its decision to settle claims to these funds by way of interpleader.  The Interpleader Defendants are enjoined from instituting or prosecuting, in any other court, any other actions against John Hancock affecting the property at issue in this interpleader action.

**SO ORDERED.**

Brooklyn, New York
May 19, 2026

/s/_____
Edward R. Korman
Senior United States District Judge

---

[6] Because the proposed order must identify an "exact United States dollar amount" to be deposited, Local Civ. R. 67.1(b)(1), John Hancock's order should identify a specific deposit date and calculate the accrued interest up to that date.  This deposit date should be seven days after the date on which John Hancock files its proposed order, so that the Court may issue the order prior to the deposit date.  In this way, the proposed order will identify the exact and correct amount to be deposited even if the Court does not so-order the proposed order on the same day it is filed.